# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEONCE J. PORCHE, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-4555-MVL-SS** |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION** | |

## REPORT AND RECOMMENDATION

The plaintiff, Leonce J. Porche, Jr. ("Porche"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423.

## PROCEDURAL HISTORY

On June 28, 2002, an Administrative Law Judge ("ALJ") denied Porche's first application for benefits. R. 112-13. On October 24, 2008, Porche appointed Regina Pusiez as his representative. R. 46-47. On December 12, 2008, he submitted a second application for benefits. He reported that he became unable to work on June 29, 2002, r. 108, as a result of bulging lumbar discs, degenerative disc disease, degenerative joint disease in his knees, carpal tunnel syndrome in his right hand, and chronic pain in both knees, hips, low back, neck and hands. R. 128. On January 15, 2009, his application was denied. R. 48-51. He requested a hearing before an ALJ. R. 52-53. On February 12, 2009, Ms. Pusicz withdrew as Porche's representative. R. 61. On April 2, 2009, Audrey Ette was appointed as Porche's representative. R. 63. There was a hearing before the ALJ on July 13, 2009. Porche was represented by counsel at the hearing. R. 20. On October 21, 2009,

an unfavorable decision was issued.  R. 12-18.  On October 29, 2010, the Appeals Council denied

the request for review.  R. 1-3.

On December 17, 2010, Porche filed a complaint in federal court.  He is not represented by

counsel.  Rec. doc. 1.  The parties filed cross-motions for summary judgment.  Rec. docs. 14 and 15.

## STATEMENT OF ISSUE ON APPEAL

Issue:  Is there substantial evidence to support the ALJ's finding that Porche was not under a
        disability  from June 29, 2002 through December 31, 2006?

## THE COMMISSIONER'S FINDINGS RELEVANT TO THE ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

1. Porche met the insured status requirements of the Social Security Act on December 31,
   2006.

2. Porche did not engage in substantial gainful activity during the period from his alleged onset
   date of June 29, 2002 through his date last insured of December 31, 2006 (20 CFR 404.1571
   *et seq*.).

3. Through the date last insured, Porche had the following severe impairments: degenerative
   disc disease, obesity, and right carpal tunnel syndrome (20 CFR 404.1520(c)).  Stone v.
   Heckler, 752 F.2d 1099 (5th Cir. 1985).

4. Through the date last insured, Porche did not have an impairment or combination of
   impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404,
   Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, Porche had the residual functional capacity to perform
   sedentary to light work as defined in 20 CFR 404.1567(b) except with the ability to lift up
   to 15 pounds 10% of the work day, lift up to 20 pounds 10% of the workday, lift 5 pounds
   off and on, walk with the ability to alternate positions every two hours, bend/turn/twist/reach
   midrange 25-35% of the workday intermittently and full rage10-15% during the day, no
   squatting, no kneeling over 3% of the day, no work on ladders, no balancing, no work at
   heights, and with the ability to climb stairs with appropriate guardrails.

6. Through the date last insured, Porche was unable to perform any past relevant work (20 CFR
   404.1565).

7. Porche was born in 1957, and was 49 years old, which is defined as a younger individual age

2

18-49, on the date last insured.  Porche subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.      Porche has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Porche was "not disabled," whether or not he had transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through the date last insured, considering Porche's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Porche could perform (20 CFR 404.1569 and 404.1569(a)).

11.     Porche was not under a disability, as defined in the Social Security Act, at any time from June 29, 2002, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(g)).

R. 14-18.

## ANALYSIS

a.      **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  This court may not re-weigh the evidence, try the issues *de novo* or substitute

its judgment for the Commissioner's.  Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step

_____

[1]  The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520©, 416.920©.

4

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry.  Id.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing.  Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."  Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462.  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

---

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

b.    **Testimony at the Hearing**.

At the time of the hearing Porche was 52.  R. 23.  He was a high school graduate.  R. 23.  His prior application was for the same condition.  R. 23-24.  He was divorced.  R. 41.  His two teenage sons lived with him.  R. 27 and 41.

From 1973 to 1999, Porche worked for Texaco.  His last position was on offshore platforms as a pumper supervisor.  R. 24.  He stopped working in 1999 and began collecting Texaco disability.  R. 25.

Beginning in 1990, Porche had ten surgeries on his knees as a result of work injuries.  R. 26.  A couple of years before the hearing he had a carpal tunnel procedure.  R. 26.  There were staff infections with at least two of his surgeries.  R. 26.  He had recurring problems with cysts and scar tissue in his knees.  R. 27.  From 1994 through the hearing he went to a chiropractor and used a TENS machine.  R. 27.

In a good night, he slept three or four hours.  R. 27.  After he got up, he prepared breakfast and read the newspaper.  R. 27.  After he walked the dog, he read more of the paper and used the computer.  R. 27.  When school was in session, he got up early to send his sons to school.  R. 28.  He took a nap almost every day.  R. 28.  He visited his sisters and brothers and had friends over occasionally.  R. 28.  He cooked a little.  R. 28.  He did not do yard work.  R. 28.  His family helped with him with cleaning the house and cooking.  R. 35.  Since he stopped working, he gained about forty pounds.  R. 29.

Porche took Aleve in the morning, a pain pill about midday, and a muscle relaxant at night.  R. 28.  The medication made him drowsy and unable to focus.  R. 29-30.  He sometimes had ringing in his ears.  R. 30.  He had a rapid heart rate.  R. 31.  He used a heart monitor.  At the time of the

hearing, he was waiting on the results from the heart monitor.  R. 31.  One of his doctors restricted

him to no lifting over ten to fifteen pounds.  R. 32.  He had trouble lifting with his left arm.  R. 32.

He could walk for about five minutes without sitting.  R. 32.  To descend steps he had to walk

sideways.  R. 33.  When his back hurt, he went to the chiropractor.  R. 34.  He used a Jacuzzi almost

every night for an hour to get relief.  R. 34.

The hypothetical question to the vocational specialist assumed that Porche could work in the

sedentary to light occupational category with other limitations.  R. 38 and 39.  With a person closely

approaching advanced age, there was some work available.  R 39-40.  If Porche had to lie down

during the day, he could not perform any work.  R. 40.

c.     **Medical Evidence**.

**1995**

On January 15, 1995, Patrick Haydel, D.C.,[2] a chiropractor, recommended that Porche have

a cross-country ski machine.  R. 204.  On August 2, 1995, Porche was seen by Dr. Patrick Haydel

with complaints of low back pain, occasional leg pain, and knee pain.  R. 203, 302-306.  On

November 9 and December 8, 1995, Dr. Patrick Haydel reported on his examination and treatment

of Porche.  R. 199-02.

**1996**

On September 30, 1996, Dr. Patrick Haydel reported on his examination and treatment of

Porche.  He recommended continued conservative care and that he return to regular duty work.  R.

197-98.  On December 18, 1996, Porche was seen by Dr. Patrick Haydel.  R. 196.

---

[2] Porche was seen by Dr. Patrick Haydel, a chiropractor, and Dr. Larry Haydel, an orthopedist.  To avoid confusion, the Report and Recommendation includes their first and last names.

**1997**

On February 14, 1997, Dr. Patrick Haydel recommended a plan of treatment for Porche. R. 195.  On December 5, 1997, Porche was seen by Dr. Patrick Haydel. R. 194.

**1998**

On April 7 and 20, 1998, Dr. Patrick Haydel certified that Porche was able to return to light duty work. R. 192-93.  On November 18, 1998, Porche was seen by Dr. Patrick Haydel.  R. 191.

**1999**

Dr. Patrick Haydel recommended that Porche be excused from work from April 6 through 15, September 22 to 29, and November 9 and 10, 1999. R. 188-89.  From January through November, Porche was seen by Dr. Patrick Haydel one to three times per month.  R. 298-300.

**2000**

From January through July, 2000, Porche was seen by Dr. Patrick Haydel two to three times a month.  R. 286-300.  On August 14, 2000, he returned to Dr. Patrick Haydel, who recommended a lumbar MRI.  R. 185 and 187.  An August 22, 2000 lumbar MRI revealed disc displacement at L3-4 without neural encroachment.  At L4-5 there was disc protrusion to the right.  There was no disc protrusion at L5-S1.  R. 182 and 307.  Porche returned to Dr. Patrick Haydel two to three times a month for the remainder of the year.  R. 276-86.

**2001**

From January through August, 2001, Porche was seen by Dr. Patrick Haydel two to three times a month.  R. 262-275.  On September 19, 2001, Dr. Patrick Haydel referred Porche to Larry Haydel, M.D., at the Houma Orthopedic Clinic for an examination on September 24, 2001.  An MRI

revealed a small disc protrusion at L4-5.  The diagnosis was a small disc protrusion opposite the side

of his symptoms.  Vioxx and Flexeril were prescribed.  R. 261 and 180-81.  Porche continued to see

Dr. Patrick Haydel for the remainder of the year.  R. 259-260.

### 2002

On January 3 and 9, 2002, Porche was seen by Dr. Patrick Haydel, D.C.  R. 257-58.  On

January 16, 2002, Porche was seen at St. Anne Medical Group.  The diagnosis was chronic knee

pain, multiple surgeries and overweight.  R. 358.  On January 28, 2002, Porche was seen by Dr.

Patrick Haydel, who referred him to Dr. Larry Haydel.  R. 257.

At the examination on January 29, 2002, Dr. Larry Haydel noted a report of mild intermittent

lower back pain with pain radiating into the right thigh.  He was not on medication.  He had received

some chiropractic therapy.  The diagnosis was low back pain with sciatic symptoms.  He was told

to take Vioxx and Flexeril and use heat.  He was to return in three weeks.  If there was no

improvement, an epidural would be scheduled.  R. 179.

Porche continued to see Dr. Patrick Haydel two to three times a month for the remainder of

the year.  R. 242-258.  On February 13, 2002, Porche was seen at St. Anne Medical Group with a

report of indigestion.  R. 357.

On December 4, 2002, Porche was seen by Dr. Charles Johnson, a surgeon.  R. 384.

### 2003

On March 26, 2003, Porche was seen by Dr. Johnson.  R. 384.  In February and March,

Porche was seen regularly by Dr. Patrick Haydel.  R. 239-41.  On June 24, 2003, Porche was seen

at St. Anne Medical Group for a checkup.  R. 356.  On July 8, 2003, Porche was seen at St. Anne

Medical Group for a re-check on his medication as it was causing indigestion.  R. 355.  In September

and October, he was seen regularly by Dr. Patrick Haydel.  R. 236-38.  On December 12, 2003, Porche was seen at St. Anne Medical Group for a cold, infection and cough. R. 354.

### 2004

Porche went to Dr. Patrick Haydel on January 8, 12, 14 and 15, 2004.  R. 234-36.  On February 16, 2004, Porche was seen at St. Anne Medical Group for a six-month checkup. R. 353. He went to Dr. Patrick Haydel on April 8, 13, 15 and 21, 2004.  R. 232-34.  On May 4, 2004, Porche was seen by Dr. Johnson.  R. 384.  On June 3, 2004, he was seen by Dr. Patrick Haydel.  R. 232. On September 14, 2004, Porche was seen at St. Anne Medical Group for a check up and indigestion. R. 352.

On November 19, 2004, Porche was seen by Dr. Johnson.  He performed an arthroscopic procedure consisting of partial medial and lateral meniscectomies and an associated synovectomy. R. 384.  On November 29, 2004, he returned to Dr. Johnson.  R. 384.

### 2005

On January 5, April 14, May 4, June 14 and July 18, 2005, Porche was seen by Dr. Johnson. On July 18, 2005, he was having difficulty with back and neck discomfort.  R. 384.

On February 11, 2005, Porche was seen at St. Anne Medical Group for a high temperature, cough and other cold symptoms. R. 351.

On June 23, 2005, Dr. Patrick Haydel restricted Porche to "no lifting ten to fifteen pounds." R. 178.  Porche returned to Dr. Patrick Haydel two to three times a month in June, July and August, 2005.  R. 228-231.

An August 18, 2005 lumbar MRI revealed a stable appearance of the lumbar spine relative to the comparison exam (August 22, 2000).  There was no high-grade central canal, lateral recess,

or foraminal stenosis.  There was no evidence for a neurally compressive disc protrusion or HNP. R. 176-77.

On December 6, 2005, Porche was seen at St. Anne Medical Group for a check-up. R. 350.

## 2006

On April 26 and 27, 2006, Porche was seen by Dr. Patrick Haydel.  R. 227-28.  On June 20, 2006, he was seen at St. Anne Medical Group for complaints of pain in his hand.  R. 349.  On October 17, 2006, he was seen at Ochsner Clinic with a request for diabetic testing.  R. 382-83.  On December 5, 2006, Porche was seen at Ochsner Clinic with a report of carpal tunnel symptoms R. 380-81.

On December 5, 2006, Porche was seen by Del Walker, M.D., an orthopedist, with complaints of bilateral pain and numbness affecting both hands.  The examination revealed a full range of motion of the neck and shoulder without pain.  Neurological examination was normal except for decreased sensation over the median nerve distribution.  There was no atrophy.  The diagnosis was bilateral carpal tunnel syndrome.  R. 365.  On December 20, 2006, he was seen by Dr. Walker, eight days after a carpal tunnel release.  The bandage became wet and there was swelling and pain.  R. 364.  On December 21, 2006, Porche reported significant improvement in his pain.  R. 363.  On December 27, 2006, Dr. Walker found no sign of further complication.  Porche was to use a brace and return on January 9, 2007.  R. 362.

## 2007

On January 7, 2007, Porche was seen by Dr. Walker four weeks after the surgery.  R. 361. On January 3, 2007, a questionnaire was completed at Haydel Chiropractic for complaints of pain in the lower back, neck and legs.  R. 168-71.  On January 3, 8 and 10, 2007, Porche was seen by Dr.

Patrick Haydel.  R. 220 and 225-26.  On February 8, 2007, Porche was seen by Dr. Walker with only minimal swelling over the incision.  He was not scheduled to return.  R. 360.  Porche was seen regularly by Dr. Patrick Haydel in March, May, June and July, 2007.  R. 221-25.

On August 6, 2007, the agent for an insurer denied a request for a lumbar MRI.  The adjuster reported that the only compensable injury was for the right knee.  The lumbar MRI was requested for pain and decreased range of motion in the low back.  R. 166-67.

Porche returned to Dr. Patrick Haydel twice in August and three times in September, 2007.  R. 219, 220 and 224.  On August 25, 2007, Dr. Patrick Haydel restricted him to no lifting over fifteen pounds. R. 175.

On October 15, 2007, the U.S. Department of Labor issued a letter stating that Porche was entitled to reasonable and necessary medical treatment related to his back injury for the remainder of his life. R. 165.  On November 27, 2007, he was seen by Dr. Patrick Haydel.  R. 218.  An MRI was scheduled for November 27, 2007.  R. 164.  It revealed a disc protrusion at L4-L5 but no nerve root impingement.  R. 403.  On November 29, December 6 and 11, 2007, Porche was seen by Dr. Patrick Haydel.  R. 218.  On December 27, 2007, Porche seen at Ochsner Clinic with a report of sinus congestion and cold symptoms.  R. 377-79.

## 2008

On January 10, 2008, Porche was seen at Ochsner Clinic for a follow-up with a report of sinus congestion and cold symptoms.  R. 374-76.  On January 11, 2008, Porche was seen by Randall D. Lea, M.D., for a medical examination.[3]  R. 384-94. He found Porche to be in the sedentary-light occupational category.  R. 393.  From February through June, 2008, Porche returned regularly to Dr.

---

[3]  Dr. Lea's speciality is not identified.

Patrick Haydel.  R. 211-216.

On June 3, 2008, Porche was seen by Dr. Larry Haydel on a referral from Dr. Patrick Haydel. He was diagnosed with cervical spondylosis, lumbar degenerative disc disease and anterior left knee pain due to irritation of the cartilage.  R. 400.

On July 11, 2008, Porche was seen at Ochsner Clinic for a check-up.  A diet was prescribed. R. 374-76.  On July 16, 2008, Dr. Larry Haydel prescribed medication.  R. 399.  On July 16, 2008, he was seen by Dr. Patrick Haydel.  R. 211.  On August 12, 2008, Dr. Larry Haydel prescribed medication.  R. 398.

From August through December, 2008, Porche was seen regularly by Dr. Patrick Haydel. R. 206-210.  On October 6, 2008, Dr. Larry Haydel prescribed medication.  R. 397.  On October 13, 2008, Porche was seen at Ochsner Clinic for a check-up and complaints of left shoulder pain.  R. 369-71.  On November 5, 2008, Dr. Larry Haydel prescribed medication.  R. 396.

### **2009**

From January through June, Porche was seen regularly by Dr. Patrick Haydel.  R. 419-423. On April 13, 2009, Porche was seen at Ochsner Clinic for a three-month follow-up for hyperlipidemia medical management.  He reported trouble sleeping.  R. 415-17.

d.     **Plaintiff's Appeal.**

<u>Issue</u>.  Is there substantial evidence to support the ALJ's finding that Porche was not under a disability from June 29, 2002 through December 31, 2006?

Porche is proceeding without counsel.  In these circumstances, his motion for summary judgment must be liberally construed.  Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995).  Porche's motion states that: (1) there is enough evidence in the record to support a decision in his favor; (2) it is undisputed that he was injured on June 29, 2002; (3) the facts are undisputed; and (4) the Court

should enter a judgment awarding him benefits retroactive to June 29, 2002. Rec. doc. 14. The Commissioner responds that substantial evidence supports the ALJ's finding that Porche possessed the residual functional capacity to perform sedentary to light work as limited. Rec. doc. 15.

Porche testified that he began having surgery on his knees in the 1990s. R. 26. He was seen by Dr. Patrick Haydel for more than ten years. On June 23, 2005, Dr. Patrick Haydel, restricted him to lifting not over ten-fifteen pounds. R. 178. He was seen by Dr. Johnson from the end of 2002 through Dr. Johnson's retirement in 2005. After surgery in 2004, there was some improvement. However in July 2005, Porche was still having some difficulty with discomfort in his back and neck. R. 384.[4] He was seen by Dr. Larry Haydel in September 2001 and January 2002. On the first visit, the diagnosis was a small disc protrusion opposite the side of the symptoms. Medication was prescribed. R. 180. On the second visit, Dr. Haydel noted a report of mild intermittent lower back pain with pain radiating into the right thigh. Porche was not on medication. Vioxx and Flexeril were prescribed. If there was no improvement an epidural would be scheduled. R. 179. There is no record of an epidural. He was seen at the St. Anne Medical Group in 2002 - 2006. The records of these visits do not contain reports of disabling back pain. R. 349-358. In December 2006, Dr. Walker performed a carpal tunnel release. R. 364. On February 8, 2007, there was only minimal swelling over the incision and Porche was not scheduled to return. R. 360. He returned to Dr. Larry Haydel five times in 2008. The diagnosis was cervical spondylosis, lumbar degenerative disc disease and anterior left knee pain due to irritation of the cartilage. Medication was prescribed. R. 396-400.

---

[4] There are no treatment notes in the record from Dr. Johnson. The reference to Dr. Johnson's treatment is found in the report of the examination by Dr. Lea on January 11, 2008. The report indicates that Dr. Lea had Dr. Johnson's notes on Porche's treatment. R. 384.

There were at least three lumbar MRIs.  An August 22, 2000 MRI revealed disc displacement at L3-4 without neural encroachment.  At L4-5 there was disc protrusion to the right.  There was no disc protrusion at L5-S1.  R. 307.  An August 18, 2005 MRI revealed a stable appearance of the lumbar spine relative to the comparison exam of August 22, 2000.  There was no high-grade central canal, lateral recess or foraminal stenosis.  There was no evidence for a neurally compressive disc protrusion.  R. 176-77.  A November 27, 2007 MRI revealed a disc protrusion at L4-L5 but no nerve root impingement.  R. 403.

On January 11, 2008, Dr. Lea examined Porche and found that "[e]ven though I believe he will require some restrictions, I also believe that he is capable of at least some degree of work."  R. 393.  He found that Porche was restricted to sedentary to light work, but was limited to the ability to lift up to 15 pounds 10% of the work day, lift up to 20 pounds 10% of the workday, and lift 5 pounds off and on.  He could walk with the ability to alternate positions every two hours, bend/turn/twist/reach midrange 25-35% of the workday intermittently, and full range 10-15% during the day.  He could not squat, kneel over three percent of the day, work on ladders, balance, or work at heights.  He could climb stairs with appropriate guardrails.  R. 393.

Porche reported to Dr. Lea continued lower back pain, primarily on the right more than the left side of his lower back with radiation into the right buttocks and right lateral thigh to the level of the knee.  He stated that he had some level of discomfort at all times in his lower back.  He reported that he took Flexeril when he could not sleep.  Vicodin was prescribed for him, but he did not take it any more.  R. 385.  Porche was taking Aleve and Advil for complaints of knee and back pain.  R. 387.  The Flexeril helped his pain to some degree.  R. 384.  The fact that Porche did not take prescription medication for his allegedly disabling pain is significant.  Griego v. Sullivan, 940

F.2d 942, 945 (5th Cir. 1991) (use of only over-the-counter pain relievers, such as aspirin, suggests that the severity of the pain is not so great as to preclude light exertional type work).

Dr. Lea indicated that Porche would have undergone more significant treatment if the pain was as bad as he alleged.

> [P]ractically speaking, this has been going on now for more than 10 years, and he has really not had any type of significant treatment other than chiropractic treatment and three MRIs that have not shown that much difference. The point I'm making is that it seems as if this was that problematic for this individual then something would have been done or tried by now.

R. 392. This conservative treatment is not suggestive of disability. Hackett v. Barnhard, 395 F.3d 1168, 1173 (10th Cir. 2005) (affirming credibility determination based in part on ALJ's finding that the claimant had responded to conservative treatment for pain).

Porche has failed to prove disabling pain. The mere existence of pain is not ground for obtaining disability benefits. Ownes v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985). Pain constitutes a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). Mild or moderate pain is not disabling. Richardson v. Bowen, 807 F.2d 444, 448 (5th Cir. 1987). Subjective complaints of pain will not take precedence over conflicting medical evidence. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989). Substantial evidence supports the ALJ's conclusion that Porche can perform a reduced range of sedentary to light work.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that Commissioner's cross-motion for summary judgment (Rec. doc. 15) be GRANTED and Porche's motion for summary judgment (Rec. doc. 14) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 17th day of October, 2011.

**SALLY SHUSHAN**
**United States Magistrate Judge**